Daniel R. Allemeier, Sr.
CA Bar No. 84768
150 SE Four Winds Drive, #409
Stuart, Florida 34996
310-780-2660
drallemeier@sbcglobal.net

*Attorney for Petitioner, Daniel R. Allemeier, Jr.*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DANIEL R. ALLEMEIER, JR.,<br><br>    Petitioner,<br><br>v.<br><br>ZYPPAH, INC.,<br><br>    Respondent | Case Number<br>2:18-cv-07437-PA-AGR<br><br>**PETITIONER'S RESPONSE TO ZYPPAH, INC.'S OPPOSITION TO DANIEL R. ALLEMEIER, JR.'S MOTION TO COMPEL ARBITRATION** |

Petitioner DANIEL R. ALLEMEIER, JR.'s ("Allemeier" or "Petitioner") hereby submits his Response to ZYPPAH, INC.'s ("Zyppah" or "Respondent") Opposition to Petitioner's Motion to Compel Arbitration (the "Opposition").

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. SUMMARY OF ARGUMENT**

Zyppah's Opposition is based on two inapplicable cases and a failure to address the Employment Arbitration Rules ("EAR") of the American Arbitration Association ("AAA"), requiring employer's to pay most arbitration costs and limiting the arbitrator's discretion.

Zyppah cited cases of *Tillman v. Tillman*, 825 F.3d 1069, 1074 (9th Cir. 2016) and *Lifescan, Inc. v. Premier Diabetic Services, Inc.*, 363 F.3d1010, 1011-13 (9th Cir. 2004) are both inapplicable for several reasons. Most obviously, the decision in *Tillman*, which applies equally to *Lifescan*, expressly excludes from its finding any application to a case, such as the case at bar, where a party deliberately choses not to pay a filing fee as required by the Arbitration Agreement.

Secondly, both of these cases involve respondents initially arbitrating but eventually being unable to pay the costs of arbitration. In the case at bar, there is no allegation or evidence, either before this Court or before the American Arbitration Association ("AAA"), of Zyppah's inability to pay.

Thirdly, neither arbitration agreement, of *Tillman* or *Lifescan*, specify the AAA's EAR governing arbitration for the disputes. Indeed, neither case involves disputes related to an employment relationship or agreement. The absence of the EAR as the governing arbitration rules also makes these cases inapplicable..

Fourthly, both *Tillman* and *Lifescan* involve respondents unable to pay arbitration costs, not filing fees. The relevant EAR sections hold the Employer liable for the bulk of the arbitration costs. Further, the EAR do not provide the kind of arbitral discretion necessary to apply the holdings of *Tillman* and *Lifescan*. The AAA in this case lacked the necessary discretion of *Tillman* and *Lifescan*.

Thus, neither of the cited cases is relevant to the issue of the instant case.

Absent those cases, Zyppah provides no authority to support its Opposition.

## II. ARGUMENT

**A. The Decision in *Tillman* Would Permit the District Court to Compel Arbitration Where a Party to an Arbitration Agreement Choses Not to Pay Filing Fees**

The 9th Circuit, in language supportive of Allemeier's contention that he is in fact an aggrieved party under 9 U.S.C. 4, stated:

> Our decision that Tillman's case may proceed does not mean that parties may refuse to arbitrate by *choosing* not to pay for arbitration. If Tillman had refused to pay for arbitration despite having the capacity to do so, the district court probably could still have sought to compel arbitration under the FAA's provision allowing such an order in the event of a party's "failure, neglect, or refusal" to arbitrate. 9 U.S.C. § 4.[1] [Emphasis and footnote number in the original]

*Tillman, supra*, at 1075.

In the referenced footnote 1, the 9th Circuit makes clear that it "need not decide how to construe 9 U.S.C. §§ 3 and 4 in the event of a party's willful nonpayment of an arbitrator's fees." Id. 1076. Thus, the 9th Circuit in *Tillman* did not decide, as Zyppah asserts, that "[a]n arbitration has been 'had in accordance with the terms of an arbitration agreement' when an arbitration was initiated but

then terminated by the arbitrator because one party did not pay its share of the arbitration fees." ECF 21, 5:10-12. Rather, what the 9th Circuit made clear was:

> "Even if such an arbitration has been terminated in accordance with the rules governing the arbitration, as Tillman's arbitration was here, it may be contrary to 'the structure and purpose of the FAA' to allow a party to an arbitration agreement to benefit from their intentional noncompliance with an arbitrator's rules. *Sink v. Aden Enters.*, 352 F.3d 1197, 1200 (9th Cir. 2003)."

*Tillman*, *supra*, fn 1.

Thus, while the 9th Circuit does not decide how it would rule, *Tillman* does allow that, as noted above, "the district court probably could still have sought to compel arbitration under the FAA's provision allowing such an order in the event of a party's "failure, neglect, or refusal" to arbitrate. 9 U.S.C. § 4," where a party refuses to arbitrate by "*choosing* not to pay for arbitration." Id. 1075.

Such is the case here. Zyppah has chosen not to pay the employer's filing fee. Nowhere in its Opposition does Zyppah assert or provide evidence of an inability to pay the fees. ECF 21. Nowhere in its September 27, 2017 Letter to the AAA, objecting to paying the filing fee, does Zyppah assert or provide evidence of an inability to pay. ECF 1-2, Exh. 5. Nowhere in its May 16, 2018 email notifying the AAA that it was not paying the filing fee does Zyppah assert or provide

evidence of an inability to pay the filing fees. ECF 1-2, Exh. 15. Absent such assertion and evidence, logically, Zyppah was able to pay and chose not to do so.

*Tillman* relies on *Lifescan* as precedent for purposes relevant to the case at bar. *Tillman*, *supra*, at 1073. However, *Lifescan* does not address the situation where a party chooses not to pay arbitration costs. *Lifescan*, *supra*. Thus, on the issue of whether a party who *chooses* not to pay arbitration costs would render the opposing party an aggrieved party under 9 U.S.C. 4, sufficient to compel arbitration, the more recent case of *Tillman* is more persuasive and would govern.

Under *Tillman* and, by extension, *Lifescan*, this Court is therefore within its authority under 9 U.S.C. § 4 to compel arbitration.

**B. A Party's Inability to Pay the Costs of Arbitration Is An Essential Element In Order to Rely on *Tillman* and *Lifescan* as Precedent.**

In support of its Opposition, Zyppah cites *Tillman*, *supra*, a 2016 decision of the 9th Circuit, where a widow sued a law firm for malpractice. After the District Court compelled arbitration and stayed the lawsuit, the widow proceeded to arbitrate until she "was ultimately unable to provide the required deposit." *Id*. at 1072. The AAA asked if the law firm would pay the costs but the firm declined. The AAA terminated the arbitration for failure to pay the costs. *Id*.

Like *Tillman*, *Lifescan*, *supra*, is a case where, after arbitrating for a time, the respondent, was "unable to pay its pro-rata share of the arbitrators' estimated

fees and costs for the remainder of the proceedings." *Lifescan*, *supra*, at 1011.

Contrary to Zyppah's contention, *Lifescan* is not a case where a party simply "would not pay its share of the arbitration costs." ECF 21, 5:22. Rather, *Lifescan* involves an arbitration where a party informed the arbitrators "that it could not afford to pay" the deposit and "it would be unable to pay its pro-rata share of the arbitrators' estimated fees and costs for the remainder of the proceedings." *Lifescan*, *supra*, at 1012. As in *Tillman*, the 9th Circuit did not find that the non-payment of costs was discretionary. Rather, the facts of both *Tillman* and *Lifescan* were that a party was "unable" to make the required payment. This is starkly different than, as Zyppah asserts, where a party "would not pay" without more. Absent a showing of an inability to pay *Tillman* and *Lifescan* are inapplicable.

### C. Neither of the Arbitration Agreements, in Either *Tillman* or *Lifescan*, Specify the Employment Arbitration Rules of the AAA

As noted above, the *Tillman* arbitration was brought under a retainer agreement with a law firm. The *Tillman* retainer agreement specified the "rules of the [AAA]" as the rules governing the arbitration. *Tillman*, *supra*, at 1072. In its decision, the 9th Circuit does refer to the Commercial Arbitration Rules, as well as its various sections granting the arbitrator discretion to adjust costs. *Id.* at 1074.

The *Lifescan* arbitration was brought under the Commercial Rules of Arbitration of the AAA. *Lifescan*, *supra*, at 1012. On its face, *Lifescan* is further

distinguishable from the case at bar where the EAR governs the arbitration.

On appeal in *Lifescan*, after the District Court compelled arbitration and ordered the non-paying party to pay arbitration costs, the 9th Circuit found that the District Court erred as the AAA followed their Commercial Arbitration Rules.  In particular the 9th Circuit stated that, "The arbitrators exercised their discretion in this case by allowing the arbitration to proceed on the condition that Lifescan advance the remaining fees."  *Id*. at 1012-13.  Further, *Lifescan* court found it important, noting that the arbitration was under the Commercial Arbitration Rules, that the AAA therefore had great "flexibility" or discretion.  *Id*. at 1013.  That flexibility included the arbitrator's ability to:  "allocate fees and expenses among the parties," "reduce or defer administrative fees in face of extreme hardship," and "assesses such [other] expenses [of arbitration] or any part thereof against any of the specified party or parties".  *Id*. at 1012.  With this "flexibility" as background, the *Lifescan* court stated that the "AAA rules allow the arbitrators to adjust the payment of costs in light of circumstances. Under the terms of the FAA, there was no "failure, neglect, or refusal" by Premier to arbitrate in this case."  *Id*. at 1013.

As noted above, *Tillman* relies heavily on *Lifescan* as precedent ("Our decision in *Lifescan* goes a long way toward resolving this dispute.")  *Tillman*, *supra*, at 1073.  Because of the broad discretion provided for in the Commercial Arbitration Rules, *Tillman* likewise found that the arbitration was conducted "in

accordance with the terms of the arbitration agreement." *Tillman, supra,* at 1074.

However, as further amplified in Section D, below, the EAR rules relating to costs are not the same as the Commercial Arbitration Rules. While Zyppah tries to link the "AAA's Employment Arbitration Rules" in Allemeier's Arbitration Agreement with those of *Lifescan* ("Like in *Lifescan,* ..." ECF 21, 6:15), *Lifescan* does not incorporate the EAR. The only rule from *Lifescan* cited by Zyppah related to the instant case, is "the AAA's rules permitted the arbitrator to suspend the proceedings when Lifescan declined to pay Premier's costs". ECF 21, 6:4-5. Zyppah links that Rule with Rule 47 of the EAR. ECF 21, 6:19 – 7:6.

Zyppah also refers to EAR Rule 48 (ECF 21, 6:19-22), without linking that rule to *Lifescan*. *Lifescan* does reference Rule 55 of the Commercial Arbitration Rules, which has similar language to EAR Rule 48. *Lifescan, supra,* at 1012.

This limited amount of arbitral discretion to adjust costs under the EAR, does not compare to the much broader discretion permitted under the Commercial Arbitration Rules. *See, supra* at 7:12-18. The broad authority of the arbitrator with respect to adjusting arbitration costs generally was key for the 9th Circuit stating: "AAA rules allow the arbitrators to adjust the payment of costs in light of circumstances." *Lifescan, supra,* at 1013. Absent such broad discretion to adjust costs as found in *Lifescan*, applying the rationale of *Lifescan* to arbitration based on the EAR, like the instant case, "may be contrary to 'the structure and purpose of

the FAA'" as the 9th Circuit warned of in *Tillman*. *Tillman, supra*, at fn. 1. Thus, *Lifescan*, and by extension *Tillman*, are inapplicable to the present case.

> **D. Arbitrator Has Little Discretion Over an Employer's Obligation to Pay the Bulk of the Arbitration Costs Under The EAR**

As noted above, neither *Tillman* nor *Lifescan* rely on the AAA EAR, the Rules applicable in the instant case. Key to *Tillman* and *Lifescan* was the substantial discretion given to the arbitrators with respect to the allocation and assessment of costs. The EAR specify that the Employer pays the bulk of the costs of arbitration. Thus, the Employer pays: the arbitrator's compensation (EAR, page 33), the employer's filing fee (EAR, page 33), hearing fees (EAR, page 34), hearing room rental (EAR, page 35), and all arbitrator expenses (EAR, page 35).

However, the EAR do not give AAA arbitrators the kind of flexibility with respect to those costs necessary to invoke the precedent of *Tillman* and *Lifescan*. Under the section of the EAR entitled, "Costs of Arbitration (including AAA Administrative Fees)" and subsection entitled "For Disputes Arising Out of Employer Plans"[1] (ECF 21, Exh. H, pages 31 -35), the EAR specify:

---

[1] The Costs of Arbitration section states: "the AAA shall make an administrative determination as to whether the dispute arises from an employer plan…" ECF 21, Exh. H, page 31. The AAA has determined that the case at bar arises from an employer plan. ECF 21, Exh. G., para. 1.

"Arbitrator compensation, expenses as defined in section (iv) below, and administrative fees are not subject to reallocation by the arbitrator(s) except upon the arbitrator's determination that a claim or counterclaim was filed for purposes of harassment or is patently frivolous."

*Id*. Page 33.

Since the AAA erroneously attempted to reallocate administrative costs in the case at bar, the arbitration of the instant case has not "proceeded pursuant to the parties agreement and rules they incorporated." ECF 21, 6:10-11 (quoting *Lifescan*). The EAR do not provide the flexibility found so important in *Lifescan*.

Notwithstanding Rule 47, the EAR under the "Costs of Arbitration" section, as quoted above, precludes reallocating administrative fees in cases like the one at bar. Rule 47 may apply under subsections the "Costs of Arbitration" section. *See* "Costs of Arbitration", Page 36, "Unless the parties' agreement provides otherwise, arbitrator compensation and administrative fees are subject to allocation by an arbitrator in an award." While the Rule 47 might therefore apply to costs in cases arbitrated under other sections of the EAR, Rule 47 would not apply to filing fees in cases applying the Cost of Arbitration provisions relating to Employer Plans, which is the EAR provision relevant here. ECF 21, Exh. H, P. 33.

Since the *Lifescan* case involves a situation where a party to the arbitration is

unable to pay the costs of arbitration, as opposed to choosing not to pay those costs, it is factually distinguishable from the instant case. Moreover, *Tillman* informs us that in cases where a party chooses not to pay the costs of arbitration, "the district court probably could still have sought to compel arbitration under the FAA's provision allowing such an order in the event of a party's "failure, neglect, or refusal" to arbitrate. 9 U.S.C. § 4." *Tillman, supra,* at 1075.

Thus, the critical facts supporting the *Tillman* and *Lifescan* decisions are distinguishable from the case presently before the Court. *Tillman* and *Lifescan* involve a party unable to continue paying costs after initially making them, and involve arbitration rules giving the arbitrator broad discretion toward allocating costs. In the instant case, the EAR allocate most costs of the arbitration to the employer and the arbitrator has limited ability to allocate costs differently. Moreover, the AAA in the instant case was not authorized to reallocate filing fees but attempted to do so.

Therefore, *Tillman* and *Lifescan* are inapplicable to the instant case. Consequently, Zyppah provides no authority in its Opposition to preclude this Court from finding Allemeier aggrieved under 9 U.S.C. §4 and compelling Zyppah to arbitrate.[2]

---

[2] Zyppah states that the AAA has advised that it will not administer "further" arbitration for Zyppah. ECF 21, 7:6-8. The actual letter from the AAA refers to

**III. CONCLUSION**

Based on the foregoing, Allemeier respectfully requests 1) the Court enter an order compelling the Zyppah to submit to arbitration according to the Arbitration Agreement's terms, including payment of applicable costs, fees, etc., (Proposed Order attached at Exhibit 1) and 2) any other relief the court deems just and proper.

Dated this 13th day of September 2018.

FOR THE PETITIONER

_____
Daniel R. Allemeier, Sr., Attorney
150 SE Four Winds Drive, #409
Stuart. FL 34996
310-780-2660
drallemeier@sbcglobal.net

"future" arbitration, it is premature to conclude whether the AAA will consider this previously filed case as a future case .

# CERTIFICATE OF SERVICE

I certify that on September 13, 2018, I caused a copy of the foregoing to be filed electronically and that the document is available for viewing and downloading from the ECF system. The following parties who are registered CM/ECF users will be served by the CM/ECF system.

*Attorney for Petitioner*
- W. Dan Lee (dlee@metallawgroup.com)
- Nicole Z. Davidson (ndavidson@metallawgroup.com)


By: ___s/ Daniel R. Allemeier, Sr.___
drallemeier@sbdglobal.net
Attorney for Petitioner, Daniel R. Allemeier, Jr.